FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 11, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOSE M.,[1]

               Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,

               Defendant.

No.  4:25-cv-5141-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Jose M. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims he is unable to work due to several physical and mental impairments. The

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

ALJ determined that Plaintiff could perform sedentary-exertional jobs with some non-disabling mental limitations. Substantial evidence does not support the ALJ's evaluation of the two consulting psychiatric opinions in the record. These errors impacted the nondisability determination. This matter is remanded for further proceedings.

## I.    Background

Plaintiff filed his Title 16 application for benefits on August 12, 2022, alleging disability due to several conditions, including conditions resulting from a gunshot wound and operations to his foot, chronic pain, diabetes, and anxiety.[2] ALJ Nathaniel Plucker held a hearing in October 2024, at which Plaintiff and a vocational expert testified.[3] Plaintiff testified that as a result of multiple surgeries to his foot, complications from diabetes, and back pain, he used a cane to walk, spent most of his day seated or lying down, and had a caregiver from

[2] Administrative Record (AR) 220. Because the application filing date starts the relevant period for Title 16 claims, the ALJ appropriately considered whether Plaintiff was disabled beginning August 12, 2022.

[3] AR 43–84.

DISPOSITIVE ORDER - 2

the State who assisted him with living tasks.[4] He testified that due to severe anxiety, he isolated at home, could not be around crowds, was frequently agitated and paranoid, and had attention and memory problems.[5] The vocational expert testified that a hypothetical individual who could perform sedentary work with certain physical, postural, and environmental limitations could perform some jobs, but the same individual with additional training, social, and attention limitations could not adjust to competitive employment.[6]

Following the hearing, the ALJ issued a decision in December 2024 finding Plaintiff not disabled.[7] The ALJ found Plaintiff's alleged symptoms were inconsistent with the medical evidence and other evidence.[8] The ALJ considered the lay statements from Plaintiff's

---

[4] AR 56–77.

[5] AR 64, 66, 74–77.

[6] AR 78–82.

[7] AR 18–32. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[8] AR 25.

DISPOSITIVE ORDER - 3

mother, who submitted a third-party statement consistent with Plaintiff's hearing testimony.[9] As to the medical opinions, the ALJ found:

- the reviewing opinion of Wayne Hurley, MD, partially persuasive.

- the examining opinions of Leslie Smith, PMHNP, Marquetta Washington, ARNP, and Jacob Franco, PMHNP, partially persuasive.

- the treating opinion of Jesus Marcelo, MD, not persuasive.

- the opinion of case manager Ken Owens not persuasive.

- the reviewing opinions of Dennis K., MD, John W., PhD, and Beth Fitterer were not considered because of incomplete author names and credentials.[10]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since August 12, 2022, the application date.

---

[9] AR 30, 321.

[10] AR 27–30.

DISPOSITIVE ORDER - 4

- Step two: Plaintiff had the following medically determinable severe impairments: residuals of a gunshot wound to the left foot with multiple surgeries; diabetes mellitus; lumbar degenerative disc disease; obesity; and generalized anxiety disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform "sedentary work" as defined in 20 C.F.R. § 416.967(a) except he could not climb ladders, ropes, or scaffolds; could occasionally climb stairs and ramps; could occasionally stoop, kneel, crouch, and crawl; needed to use a cane when ambulating; must avoid exposure to vibration and hazards; was limited to work involving simple, routine tasks and simple work-related decisions; could occasionally interact with coworkers and supervisors; could never interact with the public; and could not perform fast-paced work such as work on an assembly line.

- Step four: Plaintiff had no past relevant work.

DISPOSITIVE ORDER - 5

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as optical goods assembler, circuit board screener, and machine tender.[11]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[12] Plaintiff now appeals to district court.[13]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[14] and such error impacted the nondisability determination.[15] Substantial evidence is

---

[11] AR 20–31.

[12] AR 1.

[13] ECF No. 1.

[14] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[15] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may

DISPOSITIVE ORDER - 6

"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]

### III.  Analysis

Plaintiff argues the ALJ committed four consequential errors: (1) improperly evaluated the medical opinion evidence; (2) inadequately evaluated the lay witness testimony; (3) erroneously rejected Plaintiff's subjective complaints; and (4) failed to meet the ALJ's burden at step

_____

not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[16] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

five.[17] The Commissioner argues that Plaintiff's challenges amount to an improper request to reweigh the evidence, that the ALJ committed no consequential error, and that substantial evidence supports the ALJ's decision.

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred in his evaluation of the mental-health opinions from NP Smith, NP Franco, and Mr. Owens, and the physical-health opinion from Dr. Marcelo, by failing to properly consider the consistency and supportability of those opinions. As is explained below, the ALJ erred in his evaluation of the consulting psychiatric opinions from NP Smith and NP Franco. These errors impacted the nondisability determination despite there being no error

---

[17] Plaintiff's step-five argument is, effectively, a culmination of his other arguments for why substantial evidence does not support the RFC. Because substantial evidence does not support the RFC for the reasons explained herein, the Court need not address the standalone step-five challenge.

in the ALJ's evaluation of the third mental-health opinion and regardless of the ALJ's evaluation of the physical-health opinion.

1.    Standard

An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings.[18] The ALJ need not however "give any specific evidentiary weight . . . to any medical opinion(s)."[19] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[20]

When evaluating the persuasiveness of each medical opinion, the regulations require the ALJ to consider and explain the supportability and consistency of each medical opinion:

> The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we

---

[18] 20 C.F.R. § 416.920c(a), (b).

[19] *Id.* § 416.920c(a).

[20] *Id.* § 416.920c(c)(1)–(5).

DISPOSITIVE ORDER - 9

will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.[21]

The regulations define these two required factors as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[22]

The ALJ may, but is not required to, explain how the other listed factors were considered.[23]

---

[21] *Id.* § 416.920c(b)(2).

[22] *Id.* § 416.920c(c)(1)–(2).

[23] *Id.* § 416.920c(b)(2).

2.    Leslie Smith, PMHNP

On December 13, 2022, NP Smith performed a psychiatric consultative examination of Plaintiff.[24] NP Smith opined that Plaintiff was unable to sustain concentration and persist in work-related activity at a reasonable pace, including regular attendance at work and completing work without interruption, because of his intolerance to be around people.[25] NP Smith also opined that Plaintiff was unable to interact with coworkers, superiors, and the public, and could not adapt to the usual stresses encountered in the workplace.[26]

The ALJ found NP Smith's opinion "partially persuasive" because it was "generally supported by the exam findings, with the claimant found to be able to answer simple questions, perform number repetition forward, and have immediate three-item recall, but made a mistake when performing repetitions backwards, made a mistake when

---

[24] AR 838–43.

[25] AR 843.

[26] *Id.*

DISPOSITIVE ORDER - 11

performing serial 7s, and appeared anxious and irritated."[27] But NP Smith's opinion was "not fully consistent with the record overall" because other evidence showed that Plaintiff could "interact occasionally with supervisors" and was limited to "no fast-paced work, as supported by findings of the claimant being cooperative, having normal speech on exam, and reporting that he got along well with authority figures, and the claimant being found to have a normal mood, affect, and judgment."[28]

Substantial evidence does not support the ALJ's rejection of NP Smith's opinion that Plaintiff was unable to sustain a reasonable work pace or interact with others, with the ALJ instead finding that Plaintiff was precluded from performing only fast-paced work and could interact occasionally with supervisors.

The Court considers the whole record to determine whether the ALJ's decision is supported by substantial evidence, but starts with the three records the ALJ cited in explaining why NP Smith's opinion was

---

[27] AR 29 (citing AR 843).

[28] *Id.* (citing AR 266, 412, 1049).

DISPOSITIVE ORDER - 12

inconsistent with the overall record: (1) Plaintiff's function report; (2) emergency department treatment records; and (3) NP Franco's psychiatric consultative examination report.[29] As relevant, Plaintiff's function report asked, "How well do you get along with authority figures?", and Plaintiff wrote, "ok."[30] Plaintiff presented to the emergency department on June 14, 2022, for treatment of facial swelling and a leg wound, and two lines in the physical examination report read, "Speech normal" and "Psychiatric: Normal mood, affect and judgment."[31] NP Franco conducted a psychiatric consultative examination on August 6, 2023, and reported "Cooperation – Fair" on the mental status exam.[32]

Cumulatively, these records are at best a "mere scintilla" of evidence with which NP Smith's opinion was not consistent.[33] The brief

---

[29] AR 29 (citing AR 266, 412, 1049).

[30] AR 266.

[31] AR 412.

[32] AR 1049.

[33] *See Hill*, 698 F.3d at 1159.

DISPOSITIVE ORDER - 13

notes that Plaintiff had normal speech, mood, affect, and judgment upon examination in the emergency department for treatment of unrelated physical-health conditions bear little relevance to Plaintiff's social capabilities at work.[34] Additionally, NP Franco's note of "fair" cooperation is a single cherry-picked normal finding surrounded by many more significant abnormal findings.[35] NP Franco also reported

---

[34] *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (comparing psychologist's mental health findings against findings from other mental health professionals); *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone who is not a mental-health professional to document observations about the claimant's mental-health symptoms); *Orn v. Astrue*, 495 F.3d 615, 634 (9th Cir. 2007) (requiring examination notes to be read in their proper context).

[35] *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (emphasizing that

DISPOSITIVE ORDER - 14

Plaintiff "kept falling asleep throughout the interview and questions needed to be repeated throughout the entire interview"; speech was "[s]lurred at times"; mood was "[a]nxious"; affect was "depressed," "blunted," and "withdrawn"; "[a]ttention/[c]oncentration (during conversational portion of evaluation)" was "[p]oor"; made errors on fund of knowledge and recall tasks; had "difficulties staying on task"; and had "difficulties concentrating with the stress of this minimal testing."[36]

The other mental-health opinions that the ALJ considered are just as, if not more, limiting than NP Smith's opinion.[37] Additionally,

---

treatment records must be viewed considering the overall diagnostic record).

[36] AR 1049–51.

[37] *See* AR 29–30, 1051 (NP Franco opining that Plaintiff was not able to understand, remember, and carry out simple or complex instructions; sustain concentration and a reasonable work pace; interact with others; or adapt to usual stresses in the workplace), 1056 (Mr. Owens,

DISPOSITIVE ORDER - 15

psychotherapy notes from March and April 2023 and behavioral medicine case management follow-ups through September 2024 described Plaintiff regularly struggling with taking care of himself and keeping up with daily tasks.[38] His primary care provider for physical-health conditions routinely noted normal mood, affect, orientation, grooming, appearance, and insight, which says little about Plaintiff's ability to interact with others and sustain pace at work, and such notes were recorded as part of physical exams and treatment for unrelated conditions such as diabetes, peripheral neuropathy, and pain.[39] And Plaintiff's testimony and his mother's statements are consistent with NP Smith's opinion.[40]

---

Plaintiff's behavioral medicine case manager, opining Plaintiff had several marked limitations in mental functioning).

[38] AR 870, 875, 880, 1194, 1199, 1204, 1214, 1229–30.

[39] *See, e.g.*, AR 791, 797, 802, 806, 835, 1019, 1116.

[40] *See* AR 64, 66, 74–77, 321.

DISPOSITIVE ORDER - 16

In finding NP Smith's opinion inconsistent with the overall record, the ALJ may have considered other evidence without citing it.[41] Throughout his brief, the Commissioner points to a batch of records which, according to the Commissioner, support both the inconsistency of NP Smith's opinion and the crafted mental RFC.[42] The Court has already addressed most of these records. As to the additional evidence, the January 2016 psychiatric evaluation is well outside the relevant time-period and, in any event, is not inconsistent with NP Smith's opinion; the evaluator reported a marked limitation in communicating at work and memory and concentration outside of normal limits.[43] The additional mental status exams in the record are inapposite to the

---

[41] *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." (quotation marks omitted)).

[42] ECF No. 15 at 4, 10–11, 15 (citing AR 327, 416, 432, 465, 478, 791, 797, 802, 806, 841–43, 1019, 1049, 1116).

[43] AR 323–27.

DISPOSITIVE ORDER - 17

consistency of NP Smith's opinion. In one, a urologist who treated conditions related to Plaintiff's foreskin noted Plaintiff was "alert and oriented to person, place, and time."[44] In another, an urgent care provider who treated facial abscess and cellulitis noted, "He is alert and oriented to person, place, and time" and "Behavior normal."[45] And in two others, a CRNA noted, "Mental Status Performs simple tasks" as part of a post-anesthesia evaluation after foot surgeries.[46] These records are cherry-picked normal findings, summarily noted by non-mental-health providers treating unrelated conditions, that are not substantial evidence undermining NP Smith's opinion.

### 3. Jacob Franco, PMHNP

On August 6, 2023, NP Franco performed a psychiatric consultative examination of Plaintiff.[47] NP Franco opined that Plaintiff was unable to understand, remember, and carry out simple or complex

---

[44] AR 416.

[45] AR 432.

[46] AR 465, 478.

[47] AR 1046–51.

DISPOSITIVE ORDER - 18

instructions; unable to sustain concentration and persist in work-related activity at a reasonable pace, including regular attendance at work and completing work without interruption; unable to interact with coworkers, superiors, and the public; and unable to adapt to the usual stresses encountered in the workplace.[48]

The ALJ found NP Franco's opinion "partially persuasive" because it was "somewhat supported by the examiner's findings, with the claimant found to have struggled with performing serial 3s, delayed word recall, money manipulation, the need to repeat questions, and difficulties staying on task and concentrating."[49] But NP Franco's abnormal findings were "not supportive of the claimant being unable to perform the tasks opined in the opinion, as evidenced by generally normal findings of unremarkable thought content, normal thought process, appropriate dress, and fair insight."[50] Additionally, the ALJ found NP Franco's opinion "only partially consistent with the record

---

[48] AR 1051.

[49] AR 29 (citing AR 1051).

[50] *Id.* (citing AR 1049).

overall with additional exam findings and limited mental health treatment overall supporting no more than moderate limits in each domain, and the claimant being limited as identified in the [RFC]," based on "normal findings, including normal recent and remote memory, cooperative behavior, good attention and concentration, appropriate dress and 'well groomed' appearance."[51] The ALJ considered NP Franco's opinion "more persuasive" than NP Smith's opinion "given the greater evidentiary support in the records."[52]

Substantial evidence does not support the ALJ's rejection of NP Franco's opinion that Plaintiff was unable to sustain a reasonable work pace, interact with others, or remember and carry out simple instructions, with the ALJ instead finding that Plaintiff was precluded from performing only fast-paced work, could interact occasionally with supervisors, and could perform work involving simple work-related decisions.

---

[51] *Id.* (citing AR 797, 841, 1049).

[52] AR 30.

DISPOSITIVE ORDER - 20

First, it is unclear which parts of NP Franco's opinion the ALJ found "more persuasive" than NP Smith's opinion or which parts of NP Franco's opinion had "greater evidentiary support in the records."[53] NP Franco's opinion was *more* disabling than NP Smith's opinion, yet the ALJ incorporated NP Smith's simple-instructions capability into the RFC while rejecting NP Franco's more-limited opinion.[54]

Second, the ALJ cited three records in explaining why NP Franco's opinion was inconsistent with the overall record: (1) a primary care record from June 2022; (2) NP Smith's report; and (3) NP Franco's report.[55] The primary care record, like the several mental-status notes discussed above in the context of NP Smith's opinion, documented treatment of unrelated physical conditions and contained a single summary of Plaintiff's normal psychiatric condition upon physical examination.[56] NP Smith found that Plaintiff had delayed recall,

---

[53] *See* AR 30.

[54] *See* AR 23–24, 843, 1051.

[55] AR 29 (citing AR 797, 841, 1049).

[56] AR 797.

DISPOSITIVE ORDER - 21

wandered off-topic, had to be asked to put his phone away, was anxious and irritable, was irritated by waiting less than five minutes, and found the interview stressful.[57] And, as discussed above in the context of NP Smith's opinion, NP Franco's own findings were consistent with his and NP Smith's opinion.[58] Therefore, these records are not substantial evidence supporting the ALJ's finding that NP Franco's opinion was inconsistent with the overall record.

The rest of the relevant overall record—which, as discussed above, consists of summary mental-status notes by non-mental-health professionals during treatment for unrelated physical conditions that are tenuously related to Plaintiff's social and pace capabilities at work—does not support finding NP Franco's opinion inconsistent for the same reasons as explained above in discussing NP Smith's opinion.

Finally, what the ALJ described as "limited mental health treatment overall" in the record is not substantial evidence inconsistent with NP Franco's opinion. True, the record does not

---

[57] AR 841–43.

[58] AR 1049–51.

DISPOSITIVE ORDER - 22

contain, for example, evidence of psychiatric hospitalizations or frequent therapy. But there is ample evidence of psychotherapy, behavioral-health case management, and medication for Plaintiff's mental-health symptoms,[59] and three specialized mental-health professionals gave opinions consistent with each other.[60]

### 4.    Ken Owens, Case Manager

Mr. Owens, Plaintiff's behavioral medicine case manager, provided an opinion on a mental-RFC check-box form.[61] Mr. Owens checked boxes indicating that Plaintiff was markedly limited in 21 mental activities and moderately limited in 3 others.[62] Mr. Owens wrote that Plaintiff's limitations were a direct result of mental illness.[63]

---

[59] *See* AR 868–80, 1191–99, 1204, 1214, 1229–30.

[60] AR 838–43, 1046–51, 1252–55.

[61] AR 1252–55.

[62] AR 1252–54.

[63] AR 1255.

DISPOSITIVE ORDER - 23

The ALJ found Mr. Owens' opinion not persuasive because it was "not supported by treatment records showing objective findings supportive of the marked limitations identified, nor does the opinion provider identify specific relevant findings."[64] Additionally, the opinion was inconsistent with the overall record because Plaintiff "generally did not have mental health treatment during the period at issue, but limited exams during this time showed the claimant to have normal recent and remote memory, cooperative behavior, good attention and concentration, appropriate dress and 'well groomed' appearance."[65]

Substantial evidence supports the ALJ's evaluation of Mr. Owens' opinion.[66] As the ALJ found, Mr. Owens did not support his opinion

---

[64] AR 30.

[65] *Id.* (citing AR 797, 841, 1049).

[66] While the ALJ's consideration of Mr. Owens' opinion by itself is adequate, it is worth noting that the opinion appears consistent with NP Smith's and NP Franco's opinions.

DISPOSITIVE ORDER - 24

with any findings or explanations, and Mr. Owens' opinion is conclusory.[67]

### 5.    Consequential Error

The erroneous evaluation of the consulting psychiatric opinions from NP Smith and NP Franco resulted in an unsupported RFC. Plaintiff also challenges the ALJ's evaluation of the opinion from his treating physician, Dr. Marcelo, which the Court need not address

---

[67] *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory and inadequately supported); *Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir. 1999) (determining that the doctor's opinion that the claimant would have "some" diminution in her concentration skills was conclusory and was not supported by relevant medical documentation); *Johnson v. Shalala*, 60 F.3d 1428, 1432–33 (9th Cir. 1995) (determining that the doctor's conclusory opinion was not substantiated by relevant medical evidence).

DISPOSITIVE ORDER - 25

because Dr. Marcelo's opinion did not concern Plaintiff's mental health.[68]

**B.    Symptom Reports: The ALJ must reevaluate on remand.**

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effect of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.[69] Plaintiff argues the ALJ failed to provide valid reasons for discounting his mental symptom reports. The ALJ discounted Plaintiff's testimony based on the medical opinions and largely the same description of the overall record as used when discounting the psychiatric opinions.[70] As the ALJ is to reevaluate the consistency of the psychiatric opinions with the overall record on remand,

---

[68] AR 1054–56.

[69] AR 27.

[70] *See* AR 27, 29–30.

DISPOSITIVE ORDER - 26

consequentially the ALJ is also to reevaluate the consistency of Plaintiff's testimony with the overall record on remand.[71]

**C.    Lay Witness: The ALJ must reevaluate on remand.**

The ALJ stated that he reviewed and considered Plaintiff's mother's statements,[72] whose third-party report described Plaintiff's functioning consistently with Plaintiff's testimony and the psychiatric opinions.[73] Plaintiff contends that the ALJ erred by effectively rejecting Plaintiff's mother's statement without comment.

---

[71] If the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence. *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); *Ghanim*, 763 F.3d at 1163; 20 C.F.R. § 416.929(c); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

[72] AR 30.

[73] *See* AR 321.

DISPOSITIVE ORDER - 27

As highlighted by the Commissioner, per regulation 20 C.F.R. § 416.920c(d), the ALJ need not articulate whether a nonmedical source statement (as opposed to a medical source statement) is supported by or consistent with the evidence. However, once a medically determinable impairment is established, the Program Operations Manual System (POMS) directs the ALJ to "consider evidence from nonmedical sources for all other findings in [the] claim, as appropriate."[74] Accordingly, "when evidence from [a] nonmedical source is material to other analyses or conclusions in a claim," the ALJ must articulate that in the determination.[75]

Here, Plaintiff's mother's statement is an important source of information about the limiting impacts of Plaintiff's impairments and is notably consistent with Plaintiff's testimony and the psychiatric

---

[74] POMS DI 24503.020C. The Court recognizes that the POMS guidance is not binding on this Court or the ALJ. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9hth Cir. 2010).

[75] POMS DI 24503.020D.

DISPOSITIVE ORDER - 28

opinions.[76] Accordingly, the ALJ on remand is to again consider the third-party statement.

## IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

When engaging in the five-step disability evaluation on remand, the ALJ must meaningfully articulate the supportability and consistency of each medical opinion. If the ALJ discounts a medical opinion based on a perceived inconsistency with the evidence, the ALJ should include sufficient explanation and citations to show that an inconsistency truly exists and why the inconsistency tends to undermine the medical opinion in question.[77] Similarly, if the ALJ discounts Plaintiff's reported symptoms, the ALJ must articulate clear

---

[76] *See Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

[77] *See* 20 C.F.R. § 416.920c(a), (b)(2), (c)(2).

and convincing reasons for discounting the identified symptoms and cite the evidence that undermines the symptoms.[78]

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 14 and 15**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 11th day of May 2026.

_Edward F. Shea_
EDWARD F. SHEA
Senior United States District Judge

---

[78] *Ghanim*, 763 F.3d at 1163.

DISPOSITIVE ORDER - 30